UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY KAZMAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAND TITLE COMPANY,<br><br>Defendant. | CASE NO. C11-1210-RSM<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

# I. INTRODUCTION

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. # 49) and Plaintiff's motion to certify class (Dkt. # 39). For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

# II. BACKGROUND

Plaintiff Anthony Kazman brought action against Land Title Company ("LTC"), which is a title and escrow agency responsible for handling real property transactions, disbursing funds, and charging fees to the escrow parties. Dkt. # 39, p. 2. On June 18, 2007, Mr. Kazman closed

the refinance of a loan secured on his property through LTC's settlement agent, Patti Leischner. *Id.* at 3. LTC prepared two estimated settlement statements ("HUD-1") for the payoff of two loans secured on Mr. Kazman's property. *Id.* at n.4. Mr. Kazman was charged $230.00 for a "Recon Fee/ACS/LTC to ACS" ("reconveyance fee") and $80.00 for "Express Mail/Courier Fees" ("courier fees"). *Id.* at 4. Mr. Kazman disputes the fees and has filed for class action certification claiming breach of contract, breach of duty of good faith and fair dealing, violation of the Washington Consumer Protection Act ("CPA"), breach of fiduciary duty, and unjust enrichment. Dkt. # 39. LTC requests the Court to defer ruling on class certification upon resolution of the claims on summary judgment.[1]

**A. Transaction**

The documents surrounding Mr. Kazman's transaction include the escrow instructions, the general and specific closing instructions provided by Mr. Kazman's lender, the HUD-1, and a document titled "Itemization of Amount Financed." Dkt. # 51, Ex. 1 & 2. Mr. Kazman's two transactions, Escrow No.: E-218536PL and Escrow No.: E-218536APL, were completed simultaneously and involve the same set of documents.

1. Escrow Instructions

Mr. Kazman signed the escrow instructions on June 12, 2007. The relevant provisions of the instructions state the following:

> TERMS OF FINANCING TRANSACTION: The terms and conditions of the financing transaction which is the subject of these instructions (referred to herein as "the transaction") and the description of the real property which will be used to secure payment of the loan (referred to herein as "the property"), are set forth in the loan commitment or other written document or agreement, and any attachments, amendments or addenda to that commitment, document or agreement (referred to herein as the "parties' agreement"), which is made a part of

---

[1] The Court previously denied LTC's Rule 12(c) motion to dismiss Mr. Kazman's claims. *See* Dkt. # 34.

these instructions by this reference. Any changes to the parties' agreement will be made a part of these instructions, without further reference, when signed by the parties and delivered to the settlement agent. These instructions are not intended to modify or supersede the terms and conditions of the parties' agreement and if there is any conflict or inconsistency between these instructions and parties' agreement, the terms and conditions of the parties' agreement shall control.

DOCUMENTS: The settlement agent is instructed to select, prepare, complete, correct, receive, hold, record and deliver documents as necessary to close the transaction. The settlement agent may request that certain documents be prepared or obtained by the parties or their attorneys, in which case the parties shall deliver the requested documents to the settlement agent before the closing date. Execution of any document will be considered approval of its form and contents by each party signing such document.

SETTLEMENT STATEMENT: The settlement agent is instructed to prepare a settlement statement showing all funds deposited for the account of each of the parties and the proposed disbursements from such funds. No funds shall be disbursed until the parties have examined and approved the settlement statement. Some items may be estimated, and the final amount of each estimated item will be adjusted to the exact amount required to be paid at the time of disbursement. The settlement amount will be immediately paid by the party liable for such payment to the party entitled to receive it.

INSTRUCTIONS FROM THIRD PARTIES: If any written instructions necessary to close the transaction according to the parties agreement are given to the settlement agent by anyone other than the parties to the transaction or their attorneys, including but not limited to lenders, these instructions will be deemed valid, only upon approval of all parties and will then be considered in this closing.

SETTLEMENT AGENT'S FEES AND EXPENSES: The settlement agent's fee is intended as compensation for the services set forth in these instructions. If additional services are required to comply with any change or addition to the parties' agreement or these instructions, or as a result of any party's assignment of interest or delay in performance, the parties agree to pay a reasonable additional fee for such services. The parties shall also reimburse the settlement agent for any out-of-pocket costs and expenses incurred by it under these instructions. *Id.*

RECONVEYANCE AUTHORIZATION: ACS Northwest, Inc. is hereby authorized to receive information on my/our behalf in order to obtain release or reconveyance documents on my/our loan(s) without further written approval from the undersigned.

Dkt. # 51, Ex. 1, Ex. 2.

2. Supplemental Closing Documents

Along with the escrow instructions, Mr. Kazman signed the HUD-1, lender's specific closing instructions, and the Itemization of Amount Financed on June 12, 2007. Dkt. # 49 at 3. The HUD-1 discloses both the reconveyance and courier fees, and Mr. Kazman signed underneath the provision that states:

> "I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement." Dkt. # 49, p. 3.

The specific closing instructions also reflect the reconveyance and courier fees, stating:

> "The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto." Dkt. # 51, Ex. 1, 2.

The "Itemization of Amount Financed" document summarizes the charges incurred in the closing, including the reconveyance and courier fees. *Id.*

**B. Reconveyance Fee**

In August 2005, LTC retained ACS Northwest, Inc. ("ACS") to assist in the process of recording full reconveyances after the loans are paid off. Dkt. # 52 at 5. During this time, ACS charged $105.00 for reconveyance tracking of each deed of trust. LTC then charged Mr. Kazman $115 for each reconveyance, totaling $230.00. *Id.* at 6. The extra amount charged was labeled as a "service" fee. *Id.*

**C. Courier Fee**

LTC uses third party carriers such as FedEx or UPS for overnight mailings of customers' escrows. Dkt. # 52 at 6. At the time of Mr. Kazman's transaction, LTC was billed in bulk over a set period by its delivery companies so it could not calculate the actual cost incurred for individual deliveries until several months after closing. Dkt. # 39 at 8. Plaintiff was charged a

total $80.00 for four overnight delivery packages. *Id.* at 9. The actual amount for the deliveries came to $65.61, but LTC has not refunded Mr. Kazman the difference. *Id.*

### III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Breach of Contract**

A contract is actionable for breach when it imposes a duty, the duty is breached, and the breach proximately causes damage to the one owed the duty. *Nw. Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wn.App. 707, 712, 899 P.2d 6 (1995). Neither party disputes that the

escrow instructions are binding contracts. Mr. Kazman, however, argues that the escrow instructions alone constitute the entire agreement, and the supplemental documents did not become part of the parties' contract. Dkt. # 52 at 11-12. The Court finds that the escrow instructions incorporate the lender's closing instructions and HUD-1 by reference, under the "Terms of Financing Transaction," "Documents," "Settlement Statement," and "Instructions from Third Parties" provisions.[2] *E.g. McFerrin v. Old Republic Title, Ltd.*, No. C08-5309BHS, 2009 WL 2045212, at *1-2 (W.D. Wash. July 9, 2009) (considering together the supplemental closing documents and HUD-1 as part of the entire transaction with the escrow instructions).

     1. The Fees

LTC argues that Mr. Kazman's breach of contract claims must be dismissed based on two general theories: 1) the absence of a contractual duty to not charge certain fees is not a recognized cause of action and 2) there was no obligation to charge exact pass-through costs. Dkt. # 49 at 7-8.

    *a. Reconveyance Fee*

In his breach claim, Mr. Kazman argues that LTC exceeded its authority in charging a reconveyance fee, because the escrow instructions do not specifically mention ACS or "reconveyance tracking" as additional charges to the Settlement Agent's Fee. Dkt. # 52 at 8. While the escrow instructions do not explicitly mention "reconveyance tracking," it contains a "Reconveyance Authorization" provision, which authorizes ACS to receive information "in order to obtain release or reconveyance documents" on the loans. Dkt. # 51, Ex. 1, 2. The

---

[2] The escrow instructions provide that any "attachments, amendments or addenda" to the loan commitment or "other documents" to secure the payment of the loan are "made part of these instructions by reference." Dkt. # 51, Ex. 1, 2. The settlement agent is further instructed to "select, prepare, complete, correct, receive, hold, record, and deliver documents as necessary to close the transaction." *Id.*

escrow instructions also allow LTC to charge for additional services in addition to the Settlement Agent's Fee in order to comply with the parties' agreement. Dkt. # 51, Ex. 1, 2. LTC argues that in the absence of a provision that prohibits a reconveyance fee, LTC properly charged for reconveyance tracking services as an "additional service" in accordance with the escrow instructions.[3] The Court agrees. The fact that LTC collected a reconveyance fee was not improper, especially since Mr. Kazman does not dispute that these services were actually used to close his transaction. Further, Mr. Kazman fails to identify a provision in the escrow instructions that obligate LTC to perform reconveyance tracking as part of the settlement agent's duties to be included in the "compensation." *See McFerrin v. Old Republic Title, Ltd.*, No. C08-5309BHS, 2009 WL 2045212, at *5 (W.D. Wash. July 9, 2009) (finding that in the absence of a specific provision in the escrow instructions obligating performance of a reconveyance, and where the reconveyance fee was disclosed prior to closing, the reconveyance fee was not part of the escrow fee).

The remaining issue is whether it was proper for LTC to charge a "service fee" for the reconveyance services. The Court finds that it was. *See Sageser v. Stewart Title of Seattle, LLC*, No. C09-582RAJ, 2011 WL 6055421, at *3 (W.D. Wash. Dec. 6, 2011) (finding that an escrow agent that outsourced its reconveyance-tracking services to another company that charges a smaller fee does not render the escrow agent's fee as breach of contract). The Court notes that Mr. Kazman's case follows a line of similar cases where courts have arrived at different outcomes based on factual distinctions. For example, Mr. Kazman cites *Tavenner v. Talon Group*, where this court found that it was improper for the closing agent to mark up its recording

---

[3] LTC retained ACS tracking services in order to ensure proper reconveyance on the deed of trust from the old lender to the new lender after the transaction had closed. LTC had no authority to convey the old deeds as it was not a holder. Dkt. # 55 at 5.

fees, because the escrow instructions expressly provided that estimated items would be adjusted to the exact amount at closing. *Tavenner*, No. C09-1370RSL, 2012 WL 6022836, at *8 (W.D. Wash. Dec. 4, 2012). Similarly here, the escrow instructions require LTC to adjust the final amount of each estimated item to the exact amount required at closing. The difference is in *Tavenner*, the closing agent itself undertook the responsibility for recording the deed, and charged a higher recording fee than the actual cost it incurred for the service. *Id.* at 3. Thus, it was charging beyond the "out of pocket expenses" it occurred. Here, LTC did not perform the reconveyance tracking, but retained ACS for the service. Thus, to obtain the "additional service," LTC collected a small fee. Mr. Kazman characterizes this as LTC secretly profiting from the transaction by charging more than what ACS charged to complete the service, but does not make any argument as to why LTC's retention of ACS should not be subject to the "reasonable additional fee" as provided in the escrow instructions. Thus, Mr. Kazman's claim for breach as to the reconveyance fee is dismissed.

  2. Courier Fee

LTC argues that it was under no obligation to charge exact pass through costs with regards to the courier fees, because they were charged as one-time fees for services performed rather than estimated expenses. Dkt. # 55 at 7. Mr. Kazman argues that the reasoning in *Tavenner* is applicable to the courier fees, since LTC does not dispute that the actual cost of the courier fees became known months after closing. Having promised to adjust the settlement statement to reflect the exact amounts that were disbursed on Mr. Kazman's behalf, LTC was not authorized to simply charge the estimate. In *Tavenner*, the closing agent failed to request per-transaction pricing from certain vendors with regard to wire/express fees, and the court found that it was in breach of the agent's obligations to charge out of pocket costs if the exact fees were

not ascertainable. *Tavenner*, No. C09-1370RSL, 2012 WL 6022836, at *6. While this situation is similar to the instant case, the parties there did not raise the same arguments.

The applicable regulation governing fees for escrow closings provides that the agent ensure that all costs incurred are for bonafide services performed by the escrow agent by either: 1) providing an estimate for the cost of the service and refunding the excess amounts collected, or 2) assuming responsibility for the service and charging a one-time fee that is reasonably related to the value of the service provided. *See* WAC 206-680D-040(3)(a)-(b). LTC argues that in assessing the courier fees, it took the latter option due to the unreliability of billing data available at the time of the transaction. Dkt. # 51, Mihulka Dec. ¶ 10. LTC maintains that it also routinely undercharged customers, yet did not collect extra for packages that exceeded any losses sustained from the fee. Dkt. # 55 at 6; Dkt. # 51, Mihulka Dec. ¶ 11. Thus, the situation is unlike *Tavenner*, where the closing agent was simply charging a rough estimate of the wire/express fees, although it had the ability ascertain the exact pass through costs at the time closing. Here, LTC calculated the fees to be proportional to the size and number of packages with the data available at the time. During the time of Mr. Kazman's transaction, there was no way to ascertain exact pass through costs, because the bills were provided as aggregate totals. Dkt. # 43, Mihulka Dec. ¶¶ 30-33. An improved billing service that allows LTC to pass through exact shipping costs was implemented after the time period of Mr. Kazman's transaction. *Id.* at 34. Thus, based on the facts surrounding Mr. Kazman's transaction, the Court finds there is no breach of contract as to the courier fees, and the claim is dismissed.

**C. Breach of Duty of Good Faith and Fair Dealing**

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569, 807 P.2d

356 (1991). However, the duty does not inject substantive terms into the parties' contract nor "create obligations in a contract where they do not exist." *Id.* Thus, as Mr. Kazman cannot succeed on his breach of contract claims, his claim for breach of good faith and fair dealing is accordingly dismissed.

**D. CPA**

The CPA prohibits any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a violation, the plaintiff must show: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Seattle Endeavors, Inc. v. Mastro*, 123 Wash.2d 339, 349 (1994) (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wash.2d 735, 739 (1987)). Mr. Kazman's CPA claim is premised on the notion that he was not "fully informed" of the facts surrounding the reconveyance and courier fees. Dkt. # 52 at 19. However, this argument assumes that LTC was not authorized to charge the disputed fees. Since the Court finds that the basis for the fees was proper, Mr. Kazman cannot establish all the elements of the CPA claim and it is accordingly dismissed.

**E. Breach of Fiduciary Duty**

A designated escrow agent, holder or trustee for the parties occupies a fiduciary relationship to all parties to the escrow. *Nat'l Bank of Wash. v. Equity Investors*, 81 Wash. 2d 886, 910, 506 P.2d 20 (1973). An "escrow agent's duties and limitations are defined . . . by his instructions." *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148 Wash. 2d 654, 663, 63 P.3d 125 (2003) (internal quotations omitted). As a fiduciary, LTC bears the burden of showing that its disbursement of funds held was proper. *Wilkins v. Lasater*, 46 Wash.App. 766, 778, 733 P.2d

221 (1987). While the Court has determined that the fees were proper, Mr. Kazman is further barred by the statute of limitations.

In Washington, the statute of limitations on a claim of breach of fiduciary duty is three years. RCW 4.16.080(2). The limitations period does not begin to run until the cause of action accrues, and under the discovery rule, a cause of action does not accrue until the plaintiff knows, or through due diligence should know, the essential elements of the cause of action. *Green v. A.P.C.*, 136 Wash.2d 87, 95, 960 P.2d 912 (1998); *see Douglass v. Stanger*, 101 Wash.App. 243, 256, 2 P.3d 998 (2000) (applying the discovery rule to a breach of fiduciary duty claim). The court must consider the factual basis for the claim. *Allen v. State*, 118 Wash.2d 753, 758, 826 P.2d 200 (1992). A plaintiff who has notice of facts sufficient to create a duty of further inquiry, is therefore deemed to have notice of all the facts disclosed in a reasonable inquiry. *Green*, 136 Wash.2d at 96. Thus, an action accrues when the plaintiff knows or should know the relevant facts supporting it, whether or not the plaintiff knows of a legal cause of action. *Allen*, 118 Wash.2d at 758. LTC argues that the statute of limitations began to toll when Mr. Kazman signed the closing documents on June 17, 2007. This was four years prior to Mr. Kazman filing his case on June 16, 2011. The Court agrees. Mr. Kazman admits to reviewing all the documents for costs and procedures and understanding that after closing, there was a three-day period to cancel the transaction. Dkt. # 50, Anderson Dec., Ex. A. Mr. Kazman was on notice of the relevant facts supporting his breach claim when he reviewed the fees and acknowledged his understanding of the costs and procedure at signing. The Court accordingly dismisses this claim.

**F. Unjust Enrichment**

Claims for unjust enrichment are subject to a three-year statute of limitations. *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wash.2d 824, 837-38, 991 P.2d 1126 (2000).

Similar to the breach of fiduciary duty claim, Mr. Kazman's unjust enrichment claim cannot prevail as it is time-barred by the statute of limitations. The Court dismisses this claim.

## IV. CONCLUSION

Having considered Defendants' motion, the response and reply thereto, all of the attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's motion for summary judgment (Dkt. #49) is GRANTED.

(2) Plaintiff's motion to certify class (Dkt. # 39) is DENIED as moot.

Dated January 13, 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE